IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Monte Hooper, On Behalf of Himself and All Others Similarly Situated, </br></br>        Plaintiff, </br></br> v. </br></br> UnitedHealth Group Incorporated, UnitedHealthcare Insurance Company, and Michelin North America, Inc., </br></br>        Defendants. | Civil Action No. 6:12-01519-TMC </br></br> **ORDER** |

## I. Background

The plaintiff, Monte Hooper ("Hooper"), brought this action on behalf of himself and others similarly situated alleging that the defendants,[1] UnitedHealth Group Incorporated and UnitedHealthcare Insurance Company (collectively "United") and Michelin North America, Inc. ("Michelin"), failed to comply with certain provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1133, in denying his claim. Hooper incurred a charge for $60.49 after his wife received injections from her doctor, in his office, for knee pain. The charge was for both an office visit and a surgical procedure. Both Hooper and his wife were participants in Michelin's self-funded benefit plan (the "Plan"). Hooper challenged the excess charge and exhausted the Plan's appeals process. Specifically, Hooper alleges that the defendants miscategorized his wife's knee injections as surgical procedures, resulting in the

---

[1] There has been much discussion about whether or not these are the proper parties to this suit. At this point in the litigation, there is no reason that issue should remain unresolved. This order refers to the named defendants as if they are the proper parties under ERISA but does not decide that issue.

excess charge. Further, Hooper asserts that the procedure resulting in the increased charge likely affected other members of the Plan.

The defendants moved to dismiss Hooper's complaint and to strike the class allegations. (ECF Nos. 24, 25.) After full briefing and oral argument, the court denied those motions in a text order. (*See* ECF No. 48.) Shortly thereafter, the court issued its standard case management order ("SCMO") for ERISA cases.[2] (ECF No. 52.) Then, in accordance with the SCMO, the parties filed their Joint Certification. (ECF No. 53.) The Joint Certification, however, was anything but "joint."

In order to address some of the parties' disagreements, Hooper requested a status conference and the defendants agreed.[3] (ECF Nos. 54, 57.) Prior to the status conference, the parties filed their Joint Stipulation, again expressing several fundamental disagreements about how the case should proceed. (ECF No. 58.) Specifically, the parties disagree as to: (1) the applicable standard of review; (2) whether the court should permit discovery outside of the administrative record; and (3) whether the case should proceed under the SCMO or a more standard civil scheduling order.[4] The court held a status conference on November 18, 2013, and

---

[2] This district has adopted a specialized case management order in cases controlled or preempted by ERISA to facilitate efficient disposition of those cases. The SCMO provides a method by which the parties are to exchange documents and information, confer as to issues to be determined by the court, and make stipulations where possible. The court entered an SCMO, in accordance with standard procedure in ERISA cases, after the court ruled on the defendants' motions to dismiss and to strike. Hooper objects to the provisions of the SCMO as inappropriate for class actions and seeks the entry of a standard civil scheduling order. The defendants assert that litigation of the class issues should be stayed until the court determines the merits of the plaintiff's claim.

[3] Along with his request for a status conference, Hooper moved for an extension of time to file the memorandum in support of judgment required by the SCMO. (ECF No. 54.) In response, the defendants expressed their belief that the parties should continue to comply with the SCMO, but did not object to an extension of time for the parties to file their memoranda. (ECF No. 57.)

[4] The parties also disagree about the contents of the governing plan documents, the plan provisions the court should consider, and which substantive issues the court should resolve. But, the court believes those three issues fold into the main issues mentioned above.

heard argument from all parties on these issues.  After a thorough review of the record, relevant case law, and the parties' apt arguments, the court decides as follows.

## II. Standard of Review

First, the parties disagree as to which standard of review the court should apply to Hooper's § 1132(a)(1)(B) claim.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone v. Bruch*, 489 U.S. 101, 956 (1989).

Here, the Plan states that "[t]he plan administrator is the Michelin Pension and Benefits Board, which has the authority to interpret plan provisions at its discretion, including eligibility for benefits, and the authority of the plan administrator is final and binding."  (ECF No. 59, Evidentiary Appendix to Joint Stipulation at SPD 000274; *see also* SPD 000287-89 ("the claims administrator has full discretion and authority to interpret the terms of the medical, prescription drug, and dental plan")).  The Fourth Circuit has found almost identical language to grant the kind of discretionary authority contemplated in *Firestone*.  *See DeNobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir. 1989) (holding that language authorizing the fiduciary to determine all benefits and resolve all questions of interpretation was a sufficient grant of authority under *Firestone*); *Richards v. United Mine Workers of America Health and Retirement Fund*, 895 F.2d 133 (4th Cir. 1990) (holding that plan language that granted the trustees "full and final determination as to all issues concerning eligibility for benefits" explicitly granted the trustees broad discretionary authority).  Accordingly, under Fourth Circuit precedent, the court should review the administrator's decision for abuse of discretion, *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008).

Under the abuse of discretion standard, the court will uphold the administrator's decision as long as it was reasonable. *Ellis v. Metro. Life. Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). To find the decision reasonable, the court must find that it resulted from a "deliberate, principled reasoning process." *Guthrie v. Nat'l Rural Elec. Coop. Assoc. Long Term Disability Plan*, 509 F.3d 644, 651 (4th Cir. 2007).

Thus, even under the umbrella of deferential review, the court should consider several factors in determining the reasonableness of the discretionary determination, such as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.[5] *Booth v. Wal-Mart Stores, Inc. Assocs Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).

Hooper contends that a de novo standard applies because: (1) at the hearing on the motions to dismiss, the defendants repeatedly claimed that they did not have discretionary authority under the Plan and (2) even if the defendants did have discretion, an abuse of discretion standard only applies where the court determines, upon a de novo review, that a contested provision of the plan is ambiguous.[6]

---

[5] Note that, after *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), a fiduciary's conflict of interest is just a factor to be considered among all of the other factors. A fiduciary has a conflict of interest if it makes benefits determinations and funds the plan.

[6] Hooper also asserts that his breach of fiduciary duty claim should be reviewed under a de novo standard because it is a legal question. The court agrees with this assertion, but that claim does not fall under § 1132(a)(1)(B) and, thus, is not subject to the same analysis.

4

However, under contract and trust principles, the written terms of the Plan trump anything the defendants may have represented at the hearing.[7]  And, the cases Hooper cites to support this assertion merely apply the factors listed above.  For instance, in *Ahuja v. Ericsson, Inc.*, 277 Fed. Appx. 300 (4th Cir. 2008), the Fourth Circuit concluded that a deferential standard applied and then stated: "in the context of an interpretation of a plan's language, we afford this deference only if the language at issue is ambiguous.  Where, in contrast, the plan's language is clear and unambiguous, a plan administrator must construe the language as written, and we owe no deference to contrary constructions." *Id.* at 302 (citations omitted).  There, the Fourth Circuit started with a presumption of deference because of the plan language and then considered case-specific factors in determining just how much deference was appropriate, or, in other words, how reasonable the decision was.  That is the same analytical framework outlined in *Booth* and the approach the court plans to take.

### III. The SCMO & Discovery

While the court agrees with the defendants that a deferential standard of review applies to this case, it does not feel that it has enough information before it to determine whether the claim denial was reasonable.  Generally, when a court reviews a benefits decision under a deferential standard, it is limited to the administrative record.  However, some courts have granted limited discovery to supplement an inadequate record.  *See, e.g., Vega v. Natl Life Ins. Servs, Inc.*, 145 F.3d 673 (5th Cir. 1998) (holding that the district court should go beyond the claim administrator's record where the record was inadequate); *see also Weber v. St. Louis University*,

---

[7] Also, the court reads the cited portions of the hearing transcript differently.  In the court's view, the defendants were not denying that the Plan granted discretionary authority to the plan and claims administrators, merely that the entities Hooper has named in this suit did not have discretionary authority.  In this context, the court does not construe the defendants' statements as a stipulation or admission that would give rise to the finding suggested by the plaintiff.

6 F.3d 558 (8th Cir. 1993) (remanding the case to the trial court because of insufficient evidence).

Here, the administrative record appears deficient.[8] During the administrative appeals process, Hooper was entitled to any document that: (1) was relied on in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required in making the determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit with respect to the participant's diagnosis, without regard to whether the statement was relied on in making the determination. (ECF No. 59 MICHELIN 000288.) Hooper was also entitled to copies of any internal rule, guideline, protocol, or similar criterion that the defendants relied on in denying his appeal. (*Id.*, MICHELIN – 000363.)

While the record does not indicate that Hooper requested any of this information during the administrative process, the court has not found, and the defense has not provided, precedent denying him access to those documents now. Accordingly, the court is suspending the SCMO, including the time for filing memoranda in support of judgment, for three months and granting limited discovery, in accordance with the representations in the SPD and correspondence between Hooper and the defendants, and limited to Hooper's claim. This limited amount of

---

[8] For instance, the record does not contain a copy of the full plan documents. However, in a January 24, 2011, denial letter to Hooper, the Chairman of the Pension and Benefits Appeals Board specifically states that the Board relied on the "Michelin 2010 Medical and Prescription Drug Plan" and later refers to the SPD as the "Summary Plan Description." (ECF No. 59 MICHELIN – 000363.) The court understands the former to refer to the full plan. But, even if it does not, the court cannot determine the issues in this case without the full plan documents. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (concluding that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)" (emphasis in original)). With this in mind, in the event that the language granting the administrator discretion to interpret the plan in the full plan document is materially different from the language in the SPD, the court will reconsider which standard of review to apply. However, in either case, the court's decision regarding the SCMO and discovery remains the same.

discovery could help the court to more effectively evaluate the defendants' decision making process and help Hooper's counsel more clearly define the types of documents they would seek in potential class discovery. In sum, this approach balances Rule 23's directive for efficiency and economy against the unique role the court plays in ERISA actions and the specific circumstances of this case.

At the end of the discovery period, the parties are to submit a joint status report and proposed amended scheduling order.

## IV. Conclusion

After considering the administrative record, the full record before this court, and the arguments presented at the status conference, the court orders that the SCMO be suspended pending the completion of discovery as described above. At that time, the court will re-evaluate the status of the case and determine if it should continue under the SCMO or if a standard civil scheduling order would be more appropriate.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

December 17, 2013
Anderson, South Carolina